**Gundlach Advertising Company, Appellees, v. W. F. Hallam & Company and W. F. Hallam, Appellant.**

**Gen. No. 20,806.　(Not to be reported in full.)**

Appeal from the Municipal Court of Chicago; the Hon. Hosea W. Wells, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed March 15, 1916. *Certiorari* denied by Supreme Court (making opinion final).

## Statement of the Case.

Action on a promissory note for $2,000 by Gundlach Advertising Company, plaintiff, against W. F. Hallam & Company and W. F. Hallam, defendants. From a judgment in favor of plaintiff for $2,000, defendants appeal.

W. F. Hallam & Company, of which W. F. Hallam is president, was a Florida corporation engaged in the business of building, contracting, and in the sale of Florida lands. Some time prior to January 19, 1912, B. J. Bussiere, president of the Classified Ad Company, an advertising corporation having its principal office in Chicago, Illinois, visited W. F. Hallam at Lakeland, Florida, to solicit advertising for his company. In the negotiations between these two men it was represented that the Classified Ad Company was financially responsible and that if permitted to conduct an advertising campaign for the Hallam Company, the result would prove of great value to its business. In these discussions it appeared that the Hallam Company would not be able to pay in cash the amount of money required to conduct this campaign, if entered into, and the plan of giving notes for part of this money was discussed, and in the course thereof it was made known that the Classified Ad Company would undertake to negotiate these notes through one Benjamin E. Page, of Chicago. As a result a proposition for this advertising campaign was submitted to the Hallam

Company by the Classified Ad Company, in a letter dated January 19, 1912, addressed to W. F. Hallam & Company, Lakeland, Florida, signed by the Classified Ad Company, per B. J. Bussiere, president. The Hallam Company signified its acceptance thereto by stating in said letter that the proposition contained therein was fully and irrevocably accepted. This letter was submitted in person by Bussiere to the Hallam Company, and all the signatures affixed to said paper and the indorsements thereon were made at Lakeland, Florida, on January 19, 1912. Said proposition provided that in consideration of the Hallam Company placing with the Classified Ad Company an advertising appropriation of $12,000, the Classified Ad Company agreed to furnish in a thorough, business like, competent manner, advertising in the best available and most valuable mediums. The Classified Ad Company was to establish and maintain a well-equipped correspondence office in Chicago to advance the interests of the Hallam Company in connection with the advertising campaign, and to place in charge thereof a competent correspondent as manager, the expense of which, viz., $1,000, was to be paid by the Hallam Company. The Classified Ad Company was further to prepare the literature required for the successful prosecution of the advertising campaign and to supervise the publication of all such literature, the appropriation therefor ($2,000) also to be paid by the Hallam Company. The Classified Ad Company further agreed to submit proofs of each piece of literature for final approval. The compensation to be received by the Classified Ad Company for its services in conducting this advertising campaign was to be a commission of three and one-half per cent. of the gross receipts resulting from the advertising campaign, either directly or indirectly.

In a separate letter of the same date, the Classified Ad Company guarantied that the Hallam Company

would receive and do $150,000 worth of business as a result of the advertising appropriation of $12,000. It also guarantied to supervise the literature expenditure of $2,000 and the Chicago office expenditure of $1,000. This guaranty provided that if the Hallam Company should fail to receive $150,000 worth of business within one year from the date of entering into the agreement aforesaid, the Classified Ad Company would refund seventy-five per cent. of the total charge for said service.

In accordance with the agreements entered into on this date, the Hallam Company gave to the Classified Ad Company in full payment of moneys needed in the campaign, including the expenditures, $6,000 in certificates of deposit, and $9,000 in the form of notes. The note sued on was one of these notes and was for the sum of $2,000 payable on October 19, 1912. This note, as well as other notes, was dated January 19, 1912, payable to W. F. Hallam & Company, at the First National Bank of Lakeland, Florida, with interest from maturity at the rate of ten per cent. per annum. They were signed by W. F. Hallam & Company per W. F. Hallam, and indorsed by W. F. Hallam & Company and by W. F. Hallam individually.

This note came into the possession of E. T. Gundlach about September 20 or 21, 1912. It was due October 19, 1912. Before its maturity it was taken over by the plaintiff company and Mr. Gundlach given credit therefor on the books of the company. It was not paid at maturity and thereupon suit was instituted against the Hallam Company and Mr. Hallam personally, by the plaintiff company, in which the judgment was entered from which this appeal has been prosecuted.

The statement of claim showed that it was a suit based upon a promissory note. Defendants, in their affidavit of merits, alleged:

Gundlach Adv. Co. v. W. F. Hallam & Co. et al., 198 Ill. App. 280.

First, That the Gundlach Advertising Company had not bought and does not now own the note here sued on; second, that the plaintiff at the time of the pretended assignment to it of said note had notice that the consideration for said note had failed and that there were good and sufficient defenses to said note as between the Classified Ad Company and Benjamin E. Page on the one side, and defendants on the other; third, that at the time of the pretended purchase of the note, the Gundlach Advertising Company and its officers and agents had such knowledge of the facts and circumstances surrounding the giving of this note and its want of consideration as to taint the entire transaction with fraud and to make the purchasing of said instrument by the Gundlach Company an act in bad faith; fourth, that at the time of the pretended purchase of the note by the Gundlach Company, no payment was ever made thereon; that before any payment was made thereon, if any payment was ever made, the Gundlach Company, and its officers and agents had become aware of the defense claimed by defendants and that the consideration for such note had failed, that the note had been secured from defendants by fraudulent practices, and had knowledge of such other facts and circumstances as to make the purchase of the note amount to an act of bad faith.

On the trial plaintiff, upon offering in evidence the note and testimony that it was unpaid, rested. The evidence on behalf of defendants showed a breach of the covenants entered into by the Classified Ad Company in consideration of which the note in question, among others, was executed and delivered; that there had been a breach of faith in the negotiation of these notes on the part of the Classified Ad Company and that the title of the said Classified Ad Company to said instrument was defective.

JOHN W. CREEKMUR and ROBERT G. DREFFEIN, for appellant.

ADAMS, FOLLANSBEE, HAWLEY & STEERE, for appellee.

Mr. Presiding Justice Pam delivered the opinion of the court.

## Abstract of the Decision.

1. Bills and notes, § 446*—*when evidence sufficient to sustain finding that title of payee to notes was defective and breach of faith in transfer.* In an action on a promissory note, evidence *held* to show a breach of covenants by the payee of note sued on, in consideration of which covenants the note, among others, had been given, and a breach of faith in the negotiation of the note on the part of such payee and that title of payee to said instrument was defective.

2. Bills and notes, § 411*—*when burden of proof on holder of note to show that it or previous holder was holder in due course.* In a suit by the holder of a note against the maker and an indorser where defendant, under his affidavit of merits, showed breach of covenants on part of prior holder of the note, in consideration of which covenants the note had been given, a breach of faith by such prior holder in their negotiation and that the title of such prior holder to the note was defective, the burden was then on plaintiff, under section 59 of the Negotiable Instrument's Act, Hurd's Rev. St., ch. 98, sec. 77 (J. & A. ¶ 7698) to prove that it, or some holder from whom it derived its title, was a holder in due course.

3. Bills and notes, § 460*—*when question whether plaintiff holder in due course for jury.* Whether or not plaintiff suing on a note, alleged by defendants to have been held and negotiated in breach of covenant, was itself a holder in due course or had derived its title from a holder in due course, *held* to be a question for the jury.

4. Bills and notes, § 448*—*when evidence sufficient to sustain finding that note was purchased in due course from holder in due course.* In an action by a corporation on a note which it had received by indorsement from one of its officers before maturity, who had received such note from an officer of the payee to apply on a personal debt of such latter officer, evidence *held* sufficient to sustain a finding that plaintiff purchased such note in due course, and had derived its title from a holder in due course.

5. Bills and notes, § 253*—*who is holder for value in due course.* One who receives a negotiable note, before maturity as payment or security for a pre-existing debt, and without any express agreement, shall be deemed a holder for a valuable consideration, in the ordinary course of trade, and shall hold it free of latent defenses on the part of the maker that the note was accompanied

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

by breach of covenants on the part of prior holders in consideration of which the note was given and a breach of faith on the part of such prior holders in its negotiation.

6. MUNICIPAL COURT OF CHICAGO, § 15*—*when exclusion of evidence of agents of adverse party proper.* The exclusion of the evidence of agents of plaintiff corporation when called for cross-examination under the Municipal Court Act, Hurd's Rev. St., ch. 37, sec. 33 (J. & A. ¶ 3345), by the defendants, in an action on a note on the question of failure of consideration or breach of faith in its negotiation, *held* correct where at the time in question defendants had not yet shown failure of consideration for the note or breach of faith in its negotiation so as to cast upon the plaintiff the burden of showing that it was a holder in due course.

7. APPEAL AND ERROR, § 479*—*when objections to instructions not available.* Where the record is barren of any objection or suggestion with reference to instructions given, defendants cannot complain on appeal of any error in such instructions, but it is counsel's duty to bring the matter to the attention of the court at the time.